Marc S. Gottlieb
**ORTOLI ROSENSTADT, LLP**
**366 Madison Avenue, 3rd Floor**
**New York, New York 10017**
**Tel: (212) 829-8943**
**Fax: (866) 294-0074**

*Attorneys for Plaintiff Thor 172 Fifth Avenue LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **THOR 172 FIFTH AVENUE, LLC.,**<br>                              **Plaintiff,**<br>       -against-<br><br>**RITUALS COSMETICS ENTERPRISE BV,**<br>**and RITUALS COSMETICS USA, INC.,**<br><br>                              **Defendants.** | Civil Action No. 22-cv-1487<br><br>**COMPLAINT** |

Plaintiff THOR 172 FIFTH AVENUE, LLC, through its attorneys Ortoli Rosenstadt, LLP, as and for its Complaint against Defendants RITUALS COSMETICS ENTERPRISE BV and RITUALS COSMETICS USA INC., alleges the following:

## INTRODUCTION

1.      Through this action, Thor 172 Fifth Avenue, LLC ("Plaintiff" or "Landlord") seeks to recover from Defendants Rituals Cosmetics USA, Inc. ("Tenant") and Rituals Cosmetics Enterprise BV ("Guarantor") (collectively, "Defendants") all back and future rents due and owing to it by Defendants jointly and severally under a written lease agreement between Plaintiff and Tenant, which included and incorporated therein a written guaranty

1

signed by Guarantor.

2. Pursuant to this guaranty, Defendant assumed joint liability for all the Tenant's financial contractual obligations to Plaintiff under the Tenant's written commercial lease agreement with Plaintiff, including responsibility for all of Tenant's "Fixed Rent" and Additional Rent," (as defined in the Lease), as well as for Plaintiff's attorneys' fees, costs and expenses it has and will incur in connection with enforcing its rights under this guaranty.

## PARTIES

3. Plaintiff Thor is a limited liability company formed under the laws of the State of Delaware with an address at c/o Ortoli Rosenstadt LLP, 366 Madison Avenue, New York, New York 10017.

4. Upon information and belief, Defendant Rituals Cosmetic Enterprise BV is a foreign company organized and existing pursuant to the laws of the Netherlands with offices located at c/o Rituals Cosmetics USA Inc., 60 Broad Street, Suite 3502, New York, New York 10004.

5. Upon information and belief, Defendant Rituals Cosmetics USA, Inc., is a Delaware Corporation with its principal place of business located at 60 Broad Street, Suite 3502, New York, New York 10004.

## JURISDICTION AND VENUE

6. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332(a)(2) insofar as there is complete diversity among the adverse parties, and the amount in controversy, without interest and costs, exceeds $75,000.

7. For diversity purposes, limited liability companies do not have any independent citizenship pursuant to 28 U.S.C. § 1332 but rather, the citizenship of an LLC is that of its members. If a member is itself an LLC, then for diversity purposes, the Court must look to the citizenship of each of its members as well for a complete diversity analysis. Based upon this analysis, there exists complete diversity of citizenship among Plaintiff and Defendants.

8. Thor's sole member, Lantfive LLC, is a New York limited liability company. Its sole member is Interstice, LLC, a Delaware limited liability company, whose sole member, Lantam, LLC, is another Delaware limited liability company. Lantam LLC is wholly owned by the Hansbo Trust, a New Zealand offshore trust, the ultimate settlor and the beneficiaries of which are Brazilian citizens. Thus, for jurisdictional purposes, Plaintiff is a citizen of either New Zealand or Brazil.

9. Defendant Tenant, Rituals Cosmetics USA, Inc., is a Delaware corporation with its principal place of business in New York, New York. For jurisdictional purposes, Tenant is deemed a dual citizen of Delaware (its place of incorporation) and New York (its primary state of residence).

10. Defendant Guarantor, Rituals Cosmetic Enterprise BV, is a foreign corporation formed under the laws of The Netherlands with an address in New York, New York. For jurisdictional purposes, Defendant Guarantor is deemed a dual citizen of The Netherlands and New York.

11. This Court has personal jurisdiction over Defendants insofar as Defendants expressly designated New York as the appropriate jurisdiction and venue to hear any disputes arising from the parties' Lease and/or Guaranty, and Defendants expressly waived all

affirmative defenses alleging a lack of jurisdiction in this Court over them.

12. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this action occurred in the Southern District of New York and the Parties designated New York as the appropriate jurisdiction for all disputes arising out of their contractual relationships.

## STATEMENT OF FACTS

13. At all relevant times, including in or about December 2015, Plaintiff was and continues to be the owner of a building located at 172 Fifth Avenue, New York, New York (the "Building").

14. The Building consists of commercial space on the ground floor and lower level and apartments on the upper floors.

15. In or about December 2015, Defendant Tenant (Rituals Cosmetics USA, Inc.), a wholly owned subsidiary of Defendant Guarantor (Rituals Cosmetics Enterprise BV) desired to rent from Plaintiff the commercial space located on the ground floor and lower level of the Building (hereinafter, the "Premises"), for a period of at least ten years.

16. The Tenant was unwilling to give a security deposit under the Lease and Plaintiff was willing to enter into the lease with its future Tenant only on condition that the Tenant's parent company, Rituals Cosmetics Enterprise BV agree to guaranty Tenant's payment obligations by means of a Guaranty, pursuant to which Guarantor agreed to guaranty all of Tenant's payment obligations in the event Tenant defaulted under the Lease.

17. On December 23, 2015, Plaintiff and Tenant Rituals entered into a written lease agreement (the "Lease"), pursuant to which the Tenant agreed to lease the Premises for a

minimum period of ten (10) years, at the monthly and annual "Fixed Rent" stated below. Tenant was also responsible for its share of any "Tax Payment," "Tenant's Insurance Payment" capped at $1,500 per year, "Additional Rent," and late fees and late payment interest charges (collectively, "Tenant's Payment Obligations").

18. The following summarizes Tenant's Fixed Rent during the Term of the Lease (and beyond), as of the "Commencement Date" of April 1, 2016:

| Lease Year | Annual | Monthly | Years |
|---|---|---|---|
| Year 1 | $1,150.000.00 | $ 95,833.33 | April 2016 thru March 2017 |
| Year 2 | $1,150.000.00 | $ 95,833.33 | April 2017 thru March 2018 |
| Year 3 | $1,184,500.00 | $ 98,708.33 | April 2018 thru March 2019 |
| Year 4 | $1,220,035.00 | $101,669.58 | April 2019 thru March 2020 |
| Year 5 | $1,256,636.05 | $104,719.67 | April 2020 thru March 2021 |
| Year 6 | $1,294,335.13 | $107,861.26 | April 2021 thru March 2022 |
| Year 7 | $1,333,165.19 | $111,097,10 | April 2022 thru March 2023 |
| Year 8 | $1,373,160.14 | $114,430.01 | April 2023 thru March 2024 |
| Year 9 | $1,414,354.95 | $117,862.91 | April 2024 thru March 2025 |
| Year 10 | $1,456,785,59 | $121,398.80 | April 2025 thru March 2026 |
| Year 11… | $1,500,489.16 | $125,040.76 | April 2026 thru March 2027 |

19. Pursuant to the Lease, Defendant Tenant agreed and was legally responsible to pay Plaintiff its Fixed Rent and Additional Rent each month and in a timely manner.

20. Section 33.1 of the Lease provides that

"Upon execution and delivery of this Lease by Tenant to Landlord, Tenant shall deliver to Landlord the Guaranty executed by Rituals Cosmetics Enterprise BV (the "Guarantor") in the form annexed hereto and made a part hereof as Exhibit E (the "Guaranty")."

21. Tenant did deliver to Plaintiff the fully executed Guaranty, signed by Defendant Guarantor. The Guaranty was incorporated in and made a part of the Lease. The Tenant took possession of the Premises as of April 1, 20216. A copy of the Lease, which includes the Guaranty, are annexed herein as **Exhibit "A."**

5

22. Pursuant to the Guaranty, to the extent that Tenant failed to satisfy its payment obligations to Plaintiff under the Lease, Guarantor agreed to be jointly and severally liable to Plaintiff for all amounts owed to Plaintiff by Tenant under the Lease, including all future rents which Plaintiff was entitled to continue to receive from Tenant throughout the term of the Lease, if Tenant defaulted on its payment obligations to Plaintiff.

23. In or about July 27, 2021, Tenant notified Plaintiff that water was leaking into a portion of the Premises. On August 25, 2021, the Landlord's superintendent determined that the leak was coming from a broken pipe located in the vacant residential unit above the Premises.

24. The Tenant was not satisfied with the repairs to the Premises and on October 20, 2021, Tenant sent Plaintiff a notice of default of the Lease. The Tenant subsequently served a second notice of default on October 29, 2021.

25. By December 1, 2021, Tenant remained unhappy with the progress of the repairs to the Premises and in total violation of its limited rights under the Lease, Tenant served Plaintiff with a Notice of Termination of the Lease.

26. On January 26, 2022, Tenant surrendered the Premises back to Plaintiff, by moving out and returning the keys to the Premises to Plaintiff's managing agent.

27. Plaintiff acknowledged receipt of the keys and its possession of the Premises. In doing so, however, Plaintiff preserved all its contractual rights under the Lease, including the right to reject the Tenant's termination.

28. Section 8.2 of the Lease provides:

> "Notwithstanding the foregoing, if as a result of Landlord's failure to make any repairs which Landlord is required to make herein (referred to herein as a "Landlord Repair Interruption"), and (i) such Landlord Repair Interruption is not due to conditions beyond Landlord's reasonable control; (ii) such Landlord

>Repair Interruption continues for more than five (5) business days following Landlord's receipt of Tenant's notice of same; (iii) such Landlord Repair Interruption materially and adversely affects Tenant's ability to conduct its business in the Premises; and (iv) Tenant actually ceases doing business in the Premises due to such Landlord Repair Interruption, then commencing on the sixth (6th) business day after Landlord's receipt of Tenant's notice referenced above, the Fixed Rent shall abate on a per diem basis for each day that Tenant is unable to open for business in the Premises, solely as a result of such Landlord Repair Interruption, until the earlier of (a) the date that the Landlord Repair Interruption is cured, and (b) the date that Tenant recommences its business operations in the Premises…."

29. Section 8.2 of the Lease goes on to establish the Tenant's sole remedy for Plaintiff's failure to adequately repair the Premises, stating,

>"Tenant acknowledges that, except as expressly provided for otherwise in this Lease, such abatement shall be Tenant's sole and exclusive remedy against Landlord in connection with any such Landlord Repair Interruption, provided, however, that Tenant shall not be precluded from making any claims with its insurers) that Tenant may be entitled to make."

30. Moreover, §1.8(C) of the Lease repeats this principle, stating,

>"Except as expressly provided to the contrary in this Lease, Tenant waives all rights to terminate or surrender this Lease and to any abatement or deferment of Rent or any other sum payable hereunder."

31. In the event of a breach of the Lease by Tenant, the Lease specifically covers the types of damages available to Plaintiff thereunder. Section 19.2 of the Lease provides:

>"<u>Damages</u>. In the event of a termination of this Lease, Tenant shall pay to Landlord, as damages, at the election of Landlord, sums equal to the aggregate of all Rent that would have been payable by Tenant had this Lease not terminated, payable upon the due dates therefor specified herein until the date hereinbefore set forth for the expiration of the Term; provided, however, that if Landlord shall relet all or any part of the Premises for all or any part of the period commencing on the day following the date of such termination and ending on the date hereinbefore set forth for the expiration of the Term, Landlord shall credit Tenant with the net rents received by Landlord from such reletting, when received, net of expenses incurred or paid by Landlord in

terminating this Lease and re-entering the Premises and securing possession thereof, as well as the expenses of reletting, including altering and preparing the Premises for new tenants, brokers' commissions, and all other expenses properly chargeable against the Premises and the rental therefrom in connection with such reletting, it being understood that any such reletting may be for a period equal to or shorter or longer than said period; provided, further, that

"i. in no event shall Landlord have any obligation to relet the Premises or any part thereof or be liable for refusal or failure to collect any rent due upon such reletting;

"ii. in no event shall Tenant be entitled to receive any excess of such net rents over the sums payable by Tenant to Landlord hereunder;

"iii. in no event shall Tenant be entitled, in any suit for the collection of damages pursuant to this paragraph to a credit in respect of any net rents from a reletting except to the extent that such net rents are actually received by Landlord prior to the commencement of such suit, and

"iv. if the Premises or any part thereof should be relet in combination with other space, then proper apportionment on a square foot basis shall be made of the rent received from such reletting and of the expenses of reletting."

32. At no time has Plaintiff sublet or relet the Premises.

33. Section 19.3 of the Lease provides in material part,

"<u>Rent Acceleration</u>. As an alternative to the remedy set forth in Section 19.2, Landlord may recover from Tenant, as liquidated damages, in addition to any unpaid Rent accrued to the date of such termination, an amount equal to the difference, for the unexpired portion of the Term hereof, between: (1) the aggregate of all Rent reserved hereunder; and (2) the then fair and reasonable rental value of the Premises, provided, however, that at any given time, Landlord shall only have the right to so accelerate such Rent for a period not to exceed one (1) year. After the expiration of any such one (1) year period, Landlord may again accelerate an additional one (1) years' worth of Rent as liquidated damages hereunder, and thereafter, landlord may continue to so accelerate same for successive periods of one (1) year each for the remainder of the Term…"

34. Section 21.7 of the Lease provides in pertinent part,

"<u>Attorneys' Fees</u>. Whenever any default, request or inaction by Tenant or Landlord causes the other party to engage an attorney and/or incur any other

8

expense, and in any action or proceeding that Landlord or Tenant may prosecute or defend to enforce or defend its rights hereunder, the non-prevailing party shall pay all reasonable out-of-pocket costs incurred by the prevailing party, including reasonable attorneys' fees to be fixed by the court, and such costs and attorneys' fees shall be made a part of the judgment such action…"

Section 26.1 of the Lease provides,

"<u>Late Charges</u>.  (A) If Tenant shall fail to pay all or any part of any Rent after the same shall have become due and payable, Tenant shall pay as Additional Rent hereunder to Landlord a late charge of four cents ($.04) for each dollar of the amount of such Rent that shall not have been paid to Landlord when due. In addition to the foregoing, if Tenant fails to pay any Rent within three (3) days after its due date, Tenant shall pay interest thereon from the date due until the date paid at an annual rate equal to four (4) percentage points above the rate then most recently announced by Citibank, N.A., New York, New York, or its successor, as its corporate base lending rate, which rate may change from time to time, and such interest shall be deemed to be Additional Rent."

35. Section 2 of the Guaranty, which was incorporated into and made a part of the Lease, provides in pertinent part,

"a. Guarantor, for itself and its successors and assigns, absolutely, irrevocably and unconditionally guarantees to Landlord, its successors and assigns, (i) the full and faithful payment and performance and observance of all obligations to be paid, performed and observed by Tenant under the Lease, when and as the Lease requires Tenant to pay, perform and observe same, including, without limitation, the prompt and timely payment of all Fixed Rent, Additional Rent and other sums payable under the Lease, including, without limitation, reasonable costs of collection and enforcement (including reasonable legal fees and disbursements) with the same force and effect as if Guarantor had been signatory to the Lease, jointly and severally liable thereunder with Tenant and (ii) the payment to Landlord of any and all damages arising from the rejection of the Lease in a bankruptcy or insolvency proceeding.

"b. The guaranteed obligations shall include, without limitation, Fixed Rent and Additional Rent, claims in any bankruptcy or insolvency proceeding, late charges, interest, reasonable costs of collection and enforcement (including reasonable legal fees and disbursements) and damages for any failure by Tenant to pay or perform any of its obligations under the Lease or otherwise…"

36. Section 5 of the Guaranty provides,

"Landlord may, at its option proceed against Guarantor without having commenced any action against or having exhausted any remedy or claim or having obtained any judgment against Tenant. In furtherance of the foregoing, Guarantor hereby waives any right to compel Landlord to proceed first against Tenant under any provisions of the Lease before proceeding against Guarantor, and Landlord may enforce this Guaranty against Guarantor either before, after, in conjunction with, or independently of any proceedings against Tenant."

37. Section 6 of the Guaranty provides,

"Guarantor shall pay all of Landlord's costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements) in enforcing this Guaranty."

38. Upon surrendering the Premises back to Plaintiff, Tenant advised Plaintiff that the January 2022 rent payment would be its last and that thereafter Tenant had no intention of paying Plaintiff any further rent, Fixed Rent or otherwise - nor did the Tenant pay anything further.

39. Pursuant to the terms of the Lease (*see* §19.2), based upon Tenant's unilateral termination, Plaintiff is entitled to collect from Tenant the total aggregate of all the Fixed Rent and Additional Rent that Tenant would have paid Landlord throughout the Term of the Lease had the Lease not been terminated; said amount to be paid as and when it would have been due under the Lease.

40. Based upon the Fixed Rent schedule set forth above, Tenant was obligated to pay Plaintiff the sum of $1,294,335.13 in Fixed Rent for Year 6 of the Lease (the period from April 1 2021 through March 30, 2022) at the rate of $107,861.26 per month.

41. Although Tenant paid the Fixed Rent through January 2022, it has failed to pay the Fixed Rent for February 2022, and Tenant has advised Plaintiff that it will not be paying the Fixed Rent for March 2022, or for the remaining four years of the Term of the Lease.

42.  Based upon the foregoing, Tenant is liable to Plaintiff for Fixed Rent for the remainder of Year 6 of the Lease – in the amount of $215,722.52 – as well as the Fixed Rent payable through years 7-10 as follows:

| Lease Year | Annual Rent | Period |
|---|---|---|
| Year 7 | $1,333,165.19 | April 2022 thru March 2023 |
| Year 8 | $1,373,160.14 | April 2023 thru March 2024 |
| Year 9 | $1,414,354.95 | April 2024 thru March 2025 |
| Year 10 | $1,456,785.59 | April 2025 thru March 2026 |
| Total | $5,578,069.87 | |

43.  In total, pursuant to §19.2 of the Lease, Tenant is liable to Plaintiff for Fixed Rent in an amount of not less than $5,793,787.87 and Additional Rent in amounts to be determined at trial.  Tenant is obligated to pay this amount to Plaintiff by the expiration of the Term of the Lease (March 2026), payable as provided in the Lease.

44.  As an alternative to the remedy set forth in §19.2, §19.3 of the Lease entitles Plaintiff to choose instead to recover from Tenant, as liquidated damages, in addition to any unpaid Rent accrued to the date of such termination (January 2022),

> "an amount equal to the difference, for the unexpired portion of the Term hereof, between (1) the aggregate of all Rent reserved hereunder; and (2) the then fair and reasonable rental value of the Premises, provided, however, that at any given time, Landlord shall only have the right to accelerate such Rent for a period not to exceed one (1) year.  After the expiration of any such one (1) year period, Landlord may again accelerate an additional one (1) years' worth of Rent as liquidated damages hereunder, and thereafter, landlord may continue to so accelerate same for successive periods of one (1) year each for the remainder of the Term."

45.  Under this provision of the Lease, Plaintiff is entitled to immediately accelerate Tenant's rent obligation for the one-year period following and commencing on the date of Tenant's unilateral termination of the Lease (February 1, 2022 through January 31, 2023) ("Year

11

1 – Accelerated Rent").

46. The Fixed Rent Tenant agreed to pay to Plaintiff during Year 1 of this Accelerated Rent period is $1,362,693.52, calculated as follows:

| | |
|---|---|
| February 2022 = | $ 107,861.26 |
| March 2022 = | $ 107,861.26 |
| April 2022 = | $ 111,097.10 |
| May 2022 = | $ 111,097.10 |
| June 2022 = | $ 111,097.10 |
| July 2022 = | $ 111,097.10 |
| August 2022 = | $ 111,097.10 |
| Sept. 2022 = | $ 111,097.10 |
| Oct. 2022 = | $ 111,097.10 |
| Nov. 2022 = | $ 111,097.10 |
| Dec. 2022 = | $ 111,097.10 |
| January 2023 = | $ 111,097.10 |
| | |
| TOTAL = | $1,362,693.52 |

47. In addition to the Fixed Rent, Plaintiff is entitled to all of the unpaid Additional Rent.

48. Following the expiration of this one-year accelerated period, Plaintiff is entitled to accelerate Tenant's obligation for the one-year period following the Year 1 – Accelerated Rent period (hereinafter, "Year 2 – Accelerated Rent"), and to continue accelerating Tenant's rent in one-year blocks at the end of each annual Accelerated Rent period.

## CAUSES OF ACTION

### AS AND FOR PLAINTIFF'S FIRST CAUSE OF ACTION
***(Breach of Lease Agreement – Rituals Cosmetics USA Inc.)***

49. Plaintiff repeats, realleges and incorporates by reference herein the allegations set forth in paragraphs "1" through "48" of the Complaint as if set forth at length herein.

50. Tenant's decision to unilaterally terminate the Lease and its decision to vacate the Premises and cease paying Fixed Rent and Additional Rent, rather than remain in the Premises and abate its rent obligation until the necessary repairs had been completed, as provided in the Lease, constituted a material breach of the Lease by Tenant.

51. As a direct and proximate cause of Tenant's breach and its continuing breach, Plaintiff Landlord has and will continue to be caused substantial monetary damages in an amount to be proven at trial but believed to no less than $1,362,693.52 and as much as $5,578,069.87, exclusive of costs, attorney's fees and other liquidated damages.

52. Based upon the foregoing, Plaintiff requests a Judgment against Defendant Tenant in an amount of not less than $5,578,069.87 to be paid to Plaintiff pursuant to Plaintiff's Fixed Rent Schedule set forth in the Lease.

## AS AND FOR PLAINTIFF'S SECOND CAUSE OF ACTION
*(Breach of Guaranty – Rituals Cosmetic Enterprise BV)*

53. Plaintiff repeats, realleges and incorporates by reference herein the allegations set forth in paragraphs "1" through "52" of the Complaint as if set forth at length herein.

54. Based upon the Guaranty, Defendant Guarantor was and is contractually obligated to pay to Plaintiff all sums due to Plaintiff under its Lease with Tenant to the extent that Tenant defaulted in satisfying its Payment Obligation(s).

55. Tenant did default in its Payment Obligations to Plaintiff under the Lease by unilaterally terminating the Lease and thereafter refusing to pay the Fixed Rent and Additional Rent as it became due and owing.

56. Tenant's failure and refusal to satisfy its Payment Obligations to Plaintiff triggered Guarantor's obligation to make good on Tenant's Payment Obligations.

57. Guarantor's failure and refusal to satisfy Tenant's Payment Obligations to Plaintiff constitutes a material breach of the Guaranty by Defendant Guarantor.

58. As a direct result of Defendant Guarantor's breach of the Guaranty, Plaintiff has been caused to sustain damages in an amount to be determined at trial but believed to be no less than $1,362,693.52, and as much as $5,578,069.87, exclusive of costs, attorney's fees and other liquidated damages.

59. Based upon the foregoing, Plaintiff requests a Judgment against Defendant Rituals Cosmetic Enterprise BV in an amount of not less than $5,578,069.87 to be paid to Plaintiff pursuant to the Fixed Rent Schedule set forth in the Lease.

WHEREFORE, Plaintiff demands the following relief:

(i) On Plaintiff's First Cause of Action, a money judgment against Defendant Rituals Cosmetics USA Inc. in an amount to be determined at trial, inquest, or motion, but believed to be no less than $5,578,069.87, plus Plaintiff's reasonable costs and attorneys' fees associated with this matter; and

(ii) On Plaintiff's Second Cause of Action, a money judgment against Defendant Rituals Cosmetic Enterprise BV in an amount to be determined at trial, inquest, or motion, but believed to be no less than $5,578,069.87, plus Plaintiff's reasonable costs and fees associated with this matter; and

(iii) For such other and further relief as to the Court may deem just and proper.

Dated: New York, New York
February 23, 2022

Respectfully submitted,

ORTOLI ROSENSTADT, LLP.

By:   /s Marc S. Gottlieb
Marc S. Gottlieb
366 Madison Avenue, 3rd Floor
New York, NY 10123
(212) 588-0022 (Tel)
(917) 848-4152 (Cell)
msg@orllp.legal (Email)
*Attorneys for Plaintiff*


To:    Rituals Cosmetics USA Inc.
60 Broad Street, Suite 3502,
New York, New York 10004

Rituals Cosmetic Enterprise BV
420 Columbus Avenue
New York, New York 10024